Good afternoon your honors, Assistant State's Attorney Joseph Alexander on behalf of the people of the state of Illinois. Okay, welcome. As you both know, I think this microphone does not amplify, it only records, so please keep your voices up nice and loud. You each have 20 minutes. You do not need to use your entire 20 minutes, but you are entitled to it. I just want to ask the appellant if you would like to reserve some of your time. I'd like to reserve two or three minutes for the court. Okay, all right. You have a seat and you may begin whenever you're ready. Good afternoon your honors, and may it please the court. Jonathan Easting on behalf of my Your honors, we're here today to decide whether Janine gets a fair chance to be heard. There's two issues that you raised in the briefs that are directed toward that question. I plan to spend more time on the first of those two issues, counsel's ineffectiveness for failing to call Mary Baker, who attests that the decedent was rushing toward Janine at the time that the fatal shot was fired. I may ask you to slow down just a little. Of course, your honor. You've already been asked to do that before. Okay, go ahead. You're not the first justice. The second issue, which I plan to briefly address at the end, is why this court should remand for new second stage proceedings in this post-conviction case because of post-conviction counsel's failure to properly amend the petition to include claims of ineffective assistance of appellate counsel. Your honors, the crucial question at this trial was whether the decedent, James Terry, was rushing at Janine at the time the shot was fired, as she testified, or if he was moving away from Janine at the time the shot was fired, as the court found and as the key state's witness testified. In this post-conviction case, Janine has presented the court below with an affidavit from a known occurrence witness who would corroborate her otherwise uncorroborated defense that in fact the decedent was rushing toward her at the time of the final shot. Mary Baker's affidavit is quite clear that it echoes Janine's testimony that Terry was about to football tackle her. Now, we have questions as to why Mary Baker was not called by defense counsel. What we need is to have a hearing where we can look at the actual reasons that counsel did not call Mary Baker and determine whether or not counsel had performed efficiently in this case. To back up for a second, Your Honor, we're on a post-conviction case, and it's just a pleading standard that's at issue here. All we're asking for is a hearing. What is at issue here is whether, taken as true and liberally construed, Janine's petition makes a substantial showing that counsel's performance was objectively unreasonable under professional norms and that she was prejudiced by that deficient performance. Is there any significance to the fact that Mary Baker's affidavit also said that the person, the male person breaking up the fight was Charles Odom, whereas the state's witness suggested that Mr. Taylor was the male person trying to break up the fight? Was that significant at all? I think it's another reason why taking the affidavit as true in this case, why this Court would, why at a new trial Sewell's testimony would be disbelieved. The state's key witness, Sewell, is the witness who had pulled a gun on Janine according to her testimony only four days before this offense. He's an admitted affiliate of the Four Corners Hustlers that are out there on the street beating up the brothers Ifemayi and Charles Odom. I mean, he denies that he threatened her life four days before, but Ifemayi, Gratina, and my client all testified to that fact. So given that, it's an additional piece of evidence that contradicts Sewell's testimony. Does it also contradict Reverend Hood's testimony? Because Reverend Hood was the one who said that Taylor was breaking up the fight, which obviously had some significance to the trial court judge. Am I remembering this correctly? I think it does. It does. You call into question those parts of Reverend Hood's testimony as well, Your Honor. And I would note with Reverend Hood's testimony in this case, even he doesn't back up the state's theory that somehow the decedent was turning to run at the time of the second shot. He sees nothing being done by the decedent between the two shots. It's only the gang member Sewell of the Four Corners Hustlers, the three-time felon that testifies he turned and ran. And in the posture of this case, though, we have to take Mary Baker's affidavit as true. And taking that affidavit as true means when we look at what the court found to be important, the question of did he turn and run or was he coming after Janine at the time of the second shot, he was coming after Janine. And because this is a witness that would have supported Janine's otherwise uncorroborated defense on this key point, then at least at this stage we need to get to a hearing to figure out why counsel didn't call her. And the oddity of this case is that counsel had told Mary Baker, according to Baker's affidavit, that he was going to call her. Now, we don't know what happened between the time of that phone conversation between Baker and counsel as to why he never gave her a telephone call, not even to make sure that she was in the courtroom and the off chance that her testimony was needed. That's what we need a hearing to figure out. Now, I would like to point out to this court the broader context of the prejudice in this case, which is that four days before this event, Janine's out there. She's trying to defuse tensions between her cousin and the Four Corners hustlers, including Cyril, including Woodseed and Taylor. She gets pushed in the face by one of the gang members. And remember, her face, she has her jaw only held together by a steel plate at this point because of a prior car accident. She needs to use pepper spray to defend herself. Even that doesn't succeed in defending herself because what happens then is one of the gang members lifts up his coat to reveal that he has a gun and offers it to another gang member to shoot her there. It's only because somebody intervenes that her life is saved. She goes and she files a police report about this. That's undisputed. Nothing happens in the next few days. These gang members are following her around until the day of the shooting. They're out there on the street right in front of her house beating up her neighbors, and her mother and aunt are there trying to break up the fight. And we have these repeated threats. Now, the last time on direct appeal, this court found that there was error in excluding some of these witnesses' testimony as to the way that Janine had been threatened, that Ephraim Myers' testimony that one of the gang members said, I'm going to kill the bitch, and Janine's mother's testimony that that gang member said he was going to get that bitch. These threats are repeated the same day as the fight. In Janine's testimony, she describes how while the gang members are out there beating up her neighbors, one of them walks by and tells her, you're next. It's only at that point, while this fight is going on, that she fumbles around her purse and pulls out the gun that she had gotten to defend herself after she had been threatened with a gun and chased around by these gang members a few days before. Was there evidence at trial that she just acquired the gun in that four-day period? She testified that she did, that she only acquired the gun after the pepper spray had been thrown at her. And there was no testimony to the contrary? I don't recall any testimony to the contrary regarding when she got the gun, Your Honor. And I believe the testimony as to that she contacted the police following the initial event was undisputed. If she had, I'm sure we would have seen the state pull out that omission from the record. I would also note that this is all further corroborated by what she does immediately after the shooting. She runs and hides from the gang. She draws, I think, eyeliner sideburns on her face and is hiding in a nearby building. And then she calls 911 to say she shot the guy and that the police should come get her. The arresting officer corroborates this. He goes into the building. He originally walks past her, and she flags him down to say that she's the one that had shot Taylor. Is it her position that she accidentally shot him or that because he was going to football tag Claire that she shot him? There's two shots, Your Honor. The initial shot, which is a subcutaneous wound through his back while he's turned, she testifies that that's accidental. That there's a dispute. They're starting to move toward her. She pulls out the gun. As it comes out of the purse, that that first shot is fired. He then turns and begins to rush toward her, and that's when the second shot is fired. And her testimony that she shot him with the second lethal shot as he was coming toward her is corroborated by the medical evidence because the wounds are coursing from front to back and it enters the right side of the forehead, whereas Sewell, the state star witness, doesn't testify that way. And, Your Honor, all we're asking for here, we're not asking this court to reverse and run for a new trial today. All we're asking for is whether taking this true and liberally construed that this claim is enough to warrant a hearing, to warrant a brief day where we put counsel on the stand and ask why she wasn't called. But Janine at least earns that opportunity to be able to hear what counsel's actual reasons were for not calling Mary Baker. I'd like to turn to the second issue. You can see the part, where's the line on that? You know, for us to, at this point in the proceeding, question a determination by trial counsel not to call a specific witness. You know, what would be the rule that would allow that to happen in this case? Because the general rule is we don't do that, right? Well, the general rule is if there's a substantial showing of deficient performance, then that would be sufficient. Right, but we generally say that's a strategic decision by counsel. We assume, essentially, that that's a strategic decision by counsel because we're not going to go back and make an inquiry in every case as to every witness that wasn't called who might have, in 20-20 hindsight, helped to defend it. Yeah, I would suggest this is where the Jones v. Calloway case that's discussed in the brief. It's the recent Seventh Circuit. I know it's actually up before the Illinois Supreme Court in a brief right now. That case is quite important because what matters, it clarifies, and I'll concede that Illinois decisions have been erratic on this, that whether a decision is strategic is a fact question, and we need counsel's actual reasons. Here, we don't know if counsel failed to call her. I can't come up with a strategic reason why, given her affidavit, he wouldn't do it. But for all we know, and what Mary Baker seems to indicate, is that maybe he failed to call her just because he lost her phone number. That wasn't a strategic decision. No, that would not be a strategic decision at all, let alone the kind of reasonable strategic decision after thorough investigation that would begin to be due deference. He lost the phone number, but it's the defendant's aunt. Yes, it is the defendant's aunt, Your Honor. We have no idea why, after telling her that he's going to call her to testify, that she never hears from him again. And I'd also note that we have some investigation. Mary Baker does remember that counsel did talk to her, but deference is a sliding scale, which is the degree that the investigation is reasonable. There's plenty of case law out there, we cite a couple of them, that indicates that in some circumstances like this, one brief phone call may not be enough to earn the full deference. Your Honor, so I'd like to turn to the second issue, which is regarding post-conviction counsel's failure to properly amend the petition to include claims of ineffective assistance of appellate counsel. Now, this issue is governed by a very specific rule that was articulated by the Illinois Supreme Court in Turner, which is if issues would be found to have been forfeited by not being raised on direct appeal, post-conviction counsel assigned to the case has to amend the petition to include in an amended petition the claims of ineffective assistance of appellate counsel. Even if the underlying claims have no merit, that's your position? That's what Turner says, Your Honor, because we can't determine whether or not they'd have merit unless counsel has done something to shape the claims into the proper legal form. Here, counsel did nothing on those claims. It's clear that she thought there might be some merit to them. She tried to argue ineffective assistance of appellate counsel. What were the claims that were missed? There's a number of them, Your Honor. One is whether the court relied, for example, on the trial court's interpretation of the physical evidence or relied on off-the-record assumptions about blood spatter evidence in this case. Now, Janine, in her pro se petition, only articulates that the court improperly studied the medical and scientific evidence. Compton counsel would reshape that into a claim of a due process violation for considering things off the record and then, to ensure it's properly preserved, add in a claim of ineffective assistance of appellate counsel as regards that. There are several other statements regarding how sufficiency of the evidence was adjudicated. One sufficiency claim was raised on direct appeal. However, there's a number of points that are not raised on direct appeal that post-conviction counsel seemed to agree should have been raised as ineffective assistance of appellate counsel. Are you familiar with our decision in Profitt? Yes, Your Honor. Go ahead. I refer this court to Justice Quinn's decision in Kirk. Toward the end of that decision, he specifically distinguished Profitt on a number of grounds. Most importantly is that Profitt did not involve a claim of ineffective assistance of appellate counsel. Given the Turner decision from the Illinois Supreme Court, given other decisions like Kirk and Schlosser that are cited in the briefs and not addressed by the State, the specific rule articulated by the Illinois Supreme Court governing claims of ineffective assistance of appellate counsel has to govern. And we've seen courts rely on those passages of Turner. As recent as this year, in 2018, there's a case cited in the brief. There's the Wallace case cited in the brief. If Turner has been impliedly overturned on that, there is yet to be a court to find it. I would also suggest that Profitt is probably mistaken when it says that we can look at the merits of claims that were never properly amended. Because here especially, the court didn't make a ruling on the merits of these claims. The court simply found, well, they were forfeited, so I can't adjudicate them procedurally. And then, well, I can't consider your claims of appellate counsel ineffectiveness because, counsel, you filed it in a response instead of doing what the rule requires you to do and putting it into an amended plea. Thank you. If this court has no further questions, I'd ask that you reverse the trial court's dismissal of her petition.   How does the court make the decision that the remand for new second-stage post-conviction proceedings with new counsel and additionally advance her claim regarding Mary Baker's affidavit to third-stage evidentiary hearing? So you're asking for them to proceed on different tracks essentially? It is to proceed on different tracks because the remedy for the second issue would require new second-stage proceedings with new counsel. This court should additionally instruct that in those proceedings the claim regarding ineffectiveness about Mary Baker should go to an evidentiary hearing. But with the same counsel? It would go to an evidentiary hearing with the new counsel, Your Honor. Okay. I understand it's a... Wouldn't the state have a right to seek dismissal at the second stage? Yes, because the second stage would require a new amended petition, there would presumably be a new motion to dismiss. This court can instruct that the claim regarding Mary Baker advance to an evidentiary hearing. And avoid the second-stage response from the prosecution? That one's already had it. Yeah, we already had a motion to dismiss on the Mary Baker claim from the prosecution. I got it. We haven't seen really a motion... ...to affirm on the ineffective assistance of appellate counsel but reverse on the ineffective assistance of trial counsel. Are you saying she needs to be appointed a different lawyer for the third-stage evidentiary hearing? If this court rejects issue number two, it would probably be based on finding that counsel did do her duty below, so there would be no need to appoint a new attorney for a third-stage evidentiary hearing. But if we find that she was ineffective, she or he, I don't know. It's she. That the linkage has been to a claim of a 651C violation, which is what is raised here. Thank you, Your Honor. Thank you. Good afternoon. I'm sorry, good afternoon, Your Honor. Mr. Alton. Assistant State's Attorney Joseph Alton on behalf of the people of the state of Illinois. Your Honor, I have to start by saying the defendant is doing more than asking this court to grant an evidentiary hearing or remand this case for an evidentiary hearing. What the defendant is actually doing is asking this court to rewrite Strickland and overrule all of the precedent that's based on it. What defendant wants is for counsel to be brought in and to explain his trial strategy. That is not what Strickland holds. Counsel's trial strategy is entitled to a strong presumption of reasonableness, and it is defendant's burden to overcome that presumption. Just out of curiosity, what possible strategy would there be for not calling Ms. Baker? Well, Your Honor, one strategy is it didn't advance defendant's claim of self-defense, and I will get into that. But the more important issue is at this juncture, we are not required to give explanations as to counsel's strategy. It is not the state's burden to argue what the strategy was. It's not trial counsel's burden to come in and explain his strategy. It is defendant's burden to show that counsel's strategy wasn't reasonable. And defendant can't meet that burden, and that's why defendant is doing a trial to circumvent Strickland. Even if we remand for a third-stage evidentiary hearing, the burden remains on the defendant. The burden does remain on the defendant. But if we look at defendant's brief and listen to defendant's arguments on appeal, it's not so that defendant can come in and show that counsel's strategy was unreasonable. It is for counsel to come in and explain that it was reasonable, and that's not what Strickland does. Oh, but if they're going to prove their case, they have to prove their case. So if, for example, they can't find this lawyer, that's going to be their problem, not yours. That's correct, Your Honor, but it goes deeper than simply our burden at the evidentiary hearing. This is basic Strickland law that counsel's trial strategy is entitled to a presumption of reasonableness. But how do we know it was strategy as opposed to forgetfulness or carelessness or, you know, or any one of the – or laziness or – I'm glad you asked that question, Your Honor. I don't know. I'm glad you asked that question because defendant's cases, the cases that he cites in his brief, the seven district cases explain how we know that this was reasonable, and it is – and counsel's decisions are entitled to that strong presumption. If we look at those cases, the court wasn't focused on the fact that counsel didn't call a witness. The court was focused on the fact that counsel made the decision without properly investigating. And the court – this court has even found that you can't – a decision can't be labeled trial strategy if there was no investigation. That's why this court remanded the defendant's first case, the dismissal of her first stage post-conviction, because this court found that we don't know why he didn't call. We can't label this trial strategy if we don't know if he even spoke to this witness. At this stage, however, defendant admits that counsel spoke to his aunt. Counsel says – said that he would call her. And at some point, counsel said, I'm not going to call this witness. And that is – You don't know that third way you made it. You're adding. What we know is they had some conversation. The end of the conversation was, as she understood it, I'm going to call you as a witness. And that's all we know. We don't know if it was a full conversation. We don't know if it was a 30-second conversation. We don't know anything. Well, we do know that defendant – in defendant's petition said that she explained what she saw. And then we have her affidavit that she told she – that she was at the incident. And so we know that there was a conversation about this incident. We know that she told counsel what she saw at this incident. Based on that, there was a reasonable investigation. And because there was a reasonable investigation, there was the decision not to call her is entitled to that strong presumption. Now, even if this court finds that that trial strategy was unreasonable – Defendant presumption can be overcome. That is absolutely correct, Your Honor. And the defendant hasn't overcome that presumption. Well, but, I mean, they filed an affidavit saying that this was critical testimony corroborating only the defendant's testimony. The other people did not see these things, the other witnesses. And that's where we are, though. We have this affidavit that says that. We do have this affidavit that says that. And we also have an affidavit that doesn't advance defendant's claim of self-defense. And we know that because the defendant shot this victim in the back, according to her own testimony. Defendant interjected herself into a fight that didn't concern her. Now, defense counsel takes this defendant as this victim who was scared. But we also have to look at all of the facts in this case. Defendant went to this alleged gang member because of something with her nephew. That didn't concern her. But she met and she talked to him. He mocked her. She maced him. She went there with her weapon. And when she was mocked, she was maced. After that, there was an altercation where a weapon was broken out. Defendant went and filed a police report. She not only filed a police report, she went and got a gun. She went to the South Side and bought a gun, put that gun in her purse. Defendant testified that at the time of all of this, she wasn't living with her family. There was some family issues going on. She was staying on the South Side. But what did defendant do? She went back to the area where these altercations occurred. And she said she went there to see if things had died down. So she knew that there was problems. Now, she's in her mother's house. Her mother and her aunt sees this commotion. They go out. She goes out on the porch with her mother and her aunt. What does her mother and her aunt tell her? Stay on the porch. But what does defendant do? She grabs her purse and she walks towards the fight. Then she pulls out her gun, not because the victim was coming towards her, but because she saw someone else coming towards the fight, like all the other people that were coming towards that fight. So she pulls out her gun and she shoots. Whether it was accidental or not, she was the initial aggressor. She pulled out the gun and fired. Now, her testimony, this is defendant's own testimony, is she fired, it hit him in the back, and he turned around and he charged at her. Well, the reason he charged at her, based on her own testimony, is she had just shot him in the back. She was the initial aggressor in this. The victim was not. The victim was engaged with someone else. Now, the fact that he said, as he was walking towards this fight, you're next, bitch, in this state, that would even constitute an assault because he took no steps to make good on that threat. So he's going with someone else. She pulls out this gun, shoots him in the back. He turns around. He charges her. Why? I would charge someone, too, who shot me in the back if I could. So the defendant, in this case, is the initial aggressor. And Mary Baker's affidavit would not have advanced that self-defense because what does Mary Baker testify to? I saw him turn around. Well, I saw him walking aggressively towards Janine, and she shot him. That's absolutely correct, according to Janine, but that doesn't mean that that was self-defense because she, that Mary Baker, doesn't testify or adhere to anything about Janine pulling out that gun in the first instance. So even if this court holds that it was unreasonable for trial counsel, after making, after investigating this witness and determining not to call her or not calling her at trial, even if this court finds that that is unreasonable, the defendant can't satisfy the second form of strickling, which is prejudice, because even if Mary Baker were called to testify, it would not overcome the fact that the defendant shot this victim in the back. I mean, her other argument was second degree because it was unreasonable self-defense. And you believe it wouldn't have supported that? It would not have supported unreasonable because, again, there was no one was coming towards her when she fired that first shot. No one had a weapon. She testified to that. We asked her on cross-examination. Did James Taylor have a gun? No. Did Tigard have a gun? No. Did he have a knife? No. No one was walking towards her when she pulled out that gun. Reverend Hood testified that Tigard was there and he was walking towards the crowd. Not only do we have the fact that no one had a gun, no one was coming towards her, we also have her letter. And even though she tried to explain that, her letter is clear. She wasn't going to let any murder put their hands on her again. That's what she said. Her last relationship made her tough. She was tough when she went to Chavez with her mace, and she was tough when she went to that fight that didn't concern her with her gun. So the fact that Mary Baker saw the defendant, the victim, walking towards her aggressively after he had been shot in the back, according to the defendant, that does not support second degree. That does not support self-defense. So even if counsel had called Mary Baker to testify, and she testified consistently with her affidavit that the victim was walking towards the defendant aggressively, it would have changed the outcome of this trial. There's no reasonable probability that this would have changed the outcome of this trial, given all of the evidence that this defendant was out there to essentially take revenge for something that happened three days prior. That's why she went and got her gun. Now, turning to the second issue, what counsel is arguing, what defendant is arguing, is that a post-conviction counsel, in order to be reasonable, has to disregard their ethical and professional responsibilities by advancing frivolous claims. The case law says that counsel does not have to do that. Counsel has three options. Counsel can withdraw, or counsel can stand on the petition. And what did counsel do in this case? Counsel stood on the petition, and the claim that had Mary, she supplemented the petition to make sure that that claim was properly presented. And she explained, and since defendants argue that we need to have the attorneys explain why they did things, in the record, she explained why she did it. She had no authority to delete or remove or omit defendants' claims. But she also didn't have the, it was against her ethical duties to advance frivolous claims. So what did she do? She supplemented the petition, and she stood on the defendant's original petition. The fact that she made arguments in her response to the people's motion to dismiss doesn't mean she was advancing those claims or advocating those claims. She was simply responding to what was put in front of her. And had she not done that, we would be in front of this court with a claim that she was ineffective or unreasonable for not responding. So she did what she needed to do. This isn't one of those really, this doesn't fit into Kirk or the other cases that defendants cite, because this is, the facts are a little different. Here she wasn't disavowing. But what we do have is an attorney trying to ensure that this defendant's claims are presented to the court, while also maintaining their integrity and their duties to the court by not advancing. So by standing on the petition, the court could have reached the merits if the court wanted to, but the court chose not to. And there was no reason to, because there was no merit to those claims. Those claims, claims one through nine, didn't raise any constitutional claims. It was literally the defendant complaining that the trial court looked at the evidence and ruled against her. It was her arguing about semantics. The trial court referring to the defendant, to the victims, and the guys involved in the fight as boys. Even though on cross-examination there was testimony that one of the people involved in the fight was 17 years old. The fact that she argued that the trial court looked at medical evidence outside the record. Reviewing the trial court's closing argument, the trial court wasn't looking at medical evidence outside of the record. The trial court was looking at the exhibits admitted, properly admitted to evidence. Throughout its closing argument, when it was talking about where bullets were placed, the blood splattered. The trial court referred to people's exhibits by number. So there was no merit to those claims. They were all frivolous, and under this case law, counsel was not required to amend a petition to include frivolous claims. So if there are no further questions, for the reasons stated here and those stated in our brief, we ask that you affirm the dismissal of the defendant's post-conviction petition. Thank you. Of course she's terrified, Your Honor. That letter is the ambiguous bluster of a woman who has the guts to finally tell off a past abuser. I'd like the court to recall that Janine has five screws and a plate holding together her left ankle because the ex-boyfriend she's writing that letter to had once pushed her down the stairs. That's what she's talking about. She's bluffing him by saying, I'm not going to take anything from any more. And the rest of the letter simply refers to the incident with Chavez a few days before. This letter certainly isn't some kind of liberation. It's an act of courage on her part, and there's no reasonable way to construe it to support the State's case at all. What it does inform is what the reasonableness of her beliefs are and why she would have those beliefs. Of course she's more likely to be afraid when she's threatened by a gun by the decedent's gangs while they're out there beating people up on her block when they have their hands on her mother. Of course she's going to be terrified given her history of being thrown down the stairs by a past abuser and having her ankle shattered. But can you address counsel's point on prejudice, that even if the trial was a bench trial, correct? It was a bench, Your Honor. So even if the judge had believed her story, which I don't think he did, because he believed Mr. Taylor was trying to break up the fight, correct? But even if he had believed the defendant's story, that wouldn't be self-defense. The elements of self-defense are not met. Can you respond to that? Well, first I'd point out that the court did expressly rely on which direction is Taylor moving at the time of the second shot. That's the actual arrest of the decedent of the trial decision, and that's what the affidavits do. Second, in terms of this idea that Janine was- I'm sorry. Just to clarify that. So the trial court believed that he was moving away from her, didn't you, Your Honor? That is correct. Rather than charging at her with what she said. And apparently the basis of that belief was Sewer's testimony that he turned to run before the second shot hit him in the forehead. I've never quite figured out the court's resolution of that. The second point as to how Janine could be the initial aggressor, I'm not aware of any case, and they haven't found any, that has found an initial aggressor when a woman on her way home comes across her family being involved in an assault by the gang that's running the block. That gang is out there. They're beating up the Odom brothers, Charles and Ifemaye. Her mother is in the middle of this, trying to separate things. Clearly she's not the one starting the fight. She's not even in the fight when it starts. Now, sure, she goes in and tries to break things up and probably is driving the gun to try to calm the fight down and keep Charles, Ifemaye, or her mother from being harmed anymore. But that doesn't make her the initial aggressor in this circumstance. This is far from a revenge fantasy. In fact, she's hiding from the gang members for the few days before when they're trying to chase her car, when they're glaring at her on the block. She's just trying to go to her family's home. That is not an act of initial aggression. And we know why she has the gun in her purse. It's because the Decedents gang and the State Star Witnesses gang had threatened her life only four days before. Do you agree that if it's remanded, the burden is clearly on you to show that this was deficient performance and to show prejudice? Of course it would be. The burden would be on us to show each of those two elements according to the usual Strickland standards, Your Honor. And finally, I would note that the State's position that any decision by a counsel that can somehow be labeled tactical must automatically be deferred to and never get a hearing is directly contrary to a lot of the law that is cited in our brief. We cite the Jones case, which the reason why the Seventh Circuit is rejecting the kind of Illinois decisions that have made that is because they treat the Strickland presumption as essentially unrebuttable and that simply labeling something as strategic or tactical can't immunize it from scrutiny. I'd also point out the several undistinguished cases in our brief that say even if counsel has interviewed a witness, the mere failure to call a known exculpatory witness can support a claim of ineffective assistance of counsel, especially at this early pleading stage where we're taking the petition as true and liberally construed. It should not be dismissed. It should go back for the chance to file an answer and bring forth whatever facts they need, and then we can go to an evidentiary hearing. Thank you, Your Honors. Thank you, counsel. We will take the matter under advisement, and you will hear from us shortly. Thank you both.